```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

**PHILIP POOLE,**

        Plaintiff,

  vs.                                  Civil Action 2:12-CV-101
                                            Judge Frost
                                            Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

        Defendant.

## REPORT AND RECOMMENDATION

### I.
### Introduction and Background

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383 for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 12, and the Commissioner's *Memorandum in Opposition*, Doc. No. 13.

Plaintiff Philip Poole filed his application for benefits on October 23, 2007, alleging that he has been disabled since May 2, 2006, as a result of Epstein Barre syndrome and a back injury. *PAGEID* 166-68, 188. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

A video hearing was held on July 21, 2010, at which plaintiff, represented by counsel, appeared and testified as did Vickie Colenburg, who testified as a vocational expert. In a decision dated July 28, 2010, the administrative law judge found that, despite his severe back impairment, plaintiff had the residual functional capacity for a reduced range of sedentary work.  Relying on the testimony of the vocational expert, the administrative law judge found that this residual functional

capacity permitted the performance of a significant number of jobs, including such jobs as check casher, office helper and order clerk. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *PAGEID* 59-66. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 13, 2011. *PAGEID* 48-52.

Plaintiff was 40 years of age at the time he filed his application. *PAGEID* 65, 166. He has a high school education. *PAGEID* 65, 192-93. Although he has worked on his family's farm, *PAGEID* 74, plaintiff has no past relevant work. *PAGEID* 65, 188-89, 204.

## II.

### Plaintiff's Testimony[1]

Plaintiff testified at the administrative hearing that he lives with his mother on his family's farm. He can care for himself, but requires assistance in lifting heavy, bulky or awkward items. He cooks occasionally and washes dishes. He is no longer able to push a mower; he does light gardening for 5-10 minutes/day. *PAGEID* 75. He socializes with neighbors and family members. He occasionally reads. He has problems with his memory. *PAGEID* 76.

Plaintiff complained of difficulty getting things done in a timely manner. *PAGEID* 76-77. "It's a rather variable thing.... I can feel the bones in my lower back move, and if they shift the wrong way then I'm pretty much just going to fall." *PAGEID* 77. His back problems are unpredictable, making it difficult to schedule activities *Id*.

Plaintiff's pain varies, depending on his back condition. *PAGEID* 86.

---

[1] Because resolution of the issues presented in this case do not turn on the vocational expert testimony, the Court will not summarize that testimony.

He has rejected back surgery because there is a chance of paralysis and no guarantee that surgery will relieve his pain. *PAGEID* 78.  He cannot use Vicodin for his pain because it makes him nauseated.  *Id.* Over the counter pain medication provides some temporary relief.  *Id.*  He rated his pain as  5-9 on a ten-point scale. *PAGEID* 78-79.

Plaintiff can sit and stand for only short periods of time; he has trouble walking even a few blocks. *PAGEID* 79-80.  He can lift up to 20 pounds but has trouble pushing or pulling objects. He can stoop and occasionally bend down to pick up objects off the ground, but if his vertebrae slip, he becomes "lock[ed] . . . in place." *PAGEID* 81. He has difficulty climbing stairs if his pain radiates into his right foot; he tends to drag his right heel. *Id.*

Plaintiff works on the farm every day. *PAGEID* 82. He testified that he feeds and waters the animals daily and tracks the blood lines of breeding cows and their calves. He can no longer complete these tasks as quickly as he previously could because he must stop and rest. *Id.*

## III.

### The Medical Evidence of Record.

An October 2004 x-ray of the lumbar spine was read as documenting unstable spondylolytic spondylolisthesis of L4-5, moderately advanced discogenic spondylosis at L4-5 and L5-S1, marked posterior apophyseal joint arthrosis at L3-S1, intravertebral canal encroachment at L5-S1, and mild discogenic spondylosis at L2-3. *PAGEID* 354.

During a May 2005 office visit, primary care physician Teresa Quinlin, M.D., noted negative straight leg raising and no clonus.  Plaintiff reported that his pain pattern migrates from mid to low back. He can walk

three miles and goes mushroom hunting. According to Dr. Quinlin, plaintiff's "fairly extensive" ambulation "tends to aggravate some of his symptoms." *PAGEID* 353.

In August 2005, plaintiff was consultatively examined at the request of the state agency by Robert Woskobnick, D.O. *PAGEID* 316-18. Dr. Woskobnick diagnosed chronic back pain with a history of spondylolisthesis of L4 and L5 and degenerative disc changes and joint disease. According to Dr. Woskobnick, prolonged standing, walking, repetitive bending forward and lifting would aggravate plaintiff's back pain. Plaintiff "would be well suited to do sedentary activities." *PAGEID* 318.

Dr. Quinlin saw plaintiff again on August 22, 2007. She reviewed the 2004 x-rays provided by plaintiff and commented that plaintiff's spondylolisthesis at L4-5 was "markedly obvious." According to Dr. Quinlin, plaintiff "is very blessed he can even walk." *PAGEID* 353. In a Basic Medical Form completed that same day, *PAGEID* 332-34, 355-56, Dr. Quinlan indicated that plaintiff could stand/walk for less than 30 minutes without interruption and less than 30 minutes in an eight-hour workday, could sit for 15 minutes without interruption and 15 minutes in an eight-hour workday, could lift/carry 20 lbs. occasionally and 10 lbs. frequently and was moderately limited in his ability to bend. Dr. Quinlin based her assessment on the 2004 x-rays. *PAGEID* 333, 356.

In December 2007, Mark Weaver, M.D., performed a consultative examination at the request of the state agency. *PAGEID* 322-30. Plaintiff reported constant low back pain and stiffness which limits his ability to lift, bend, twist and carry to 10 pounds occasionally, and his ability to sit, stand and walk to 30 minutes at a time. Plaintiff also reported using a walking stick intermittently. On clinical examination, Dr. Weaver noted

4

no swelling or gross deformities, tenderness, crepitus or ligamentous laxity in any extremity. Strength testing was normal and symmetric. He noted thoracolumbar scoliosis with flattening of the lower thoracic and lumbar curves. Dr. Weaver also noted constant moderate involuntary spasm to inspection and palpation of the lower thoracic and lumbar paravertebral muscles bilaterally, with tenderness to palpation in the lumbosacral junction and lower lumbar vertebrae. Active motion was restricted in the dorsolumbar spine with complaints of pain at the extremes of motion. Straight leg raising was negative bilaterally for radicular sciatica pain. No organic radicular cervical, thoracic or lumbar nerve root impingement was noted. After examining plaintiff and reviewing the 2004 x-rays, Dr. Weaver concluded that plaintiff would be limited in his ability to engage in sustained sitting, standing and walking and in performing repetitive or moderate to heavy lifting and carrying. According to Dr. Weaver, plaintiff could perform physical activities involving occasional light lifting and carrying short distances and handling objects; he would also require an environment that allowed him to change positions from sitting to standing periodically. *PAGEID* 325.

State agency physician Gerald Klyop, M.D., reviewed the file in May 2008, *PAGEID* 335-42, and concluded that plaintiff could lift and/or carry and push and/or pull up to 50 pounds occasionally and up to 25 pounds frequently; he could stand and/or walk about six hours in an eight-hour workday and could sit about six hours in an eight-hour workday. *Id.* Dr. Klyop also found that plaintiff's allegations were partially credible *PAGEID* 340.

F. Paul DeGenova, D.O., an orthopaedic surgeon, saw plaintiff on June 27, 2008 for complaints of worsening low back pain. *PAGEID* 343-44. Plaintiff

5

complained of shooting pain into the right leg with occasional pain in the left leg. Plaintiff rated the pain at 6 on a 10-point scale; his symptoms improve when he lies down. Plaintiff also reported numbness/tingling in the right leg. An elastic brace provided some relief. *PAGEID* 343. Plaintiff reported that he could be active for an hour or two. Dr. DeGenova noted "a bit of an antalgic gait;" plaintiff's tandem gait was steady and both his heel and toe walk were strong. *Id.* There was no tenderness to palpation, spasm or atrophy in the spine. There was normal range of motion in the lumbar spine. *PAGEID* 344. Straight leg raising was negative bilaterally with no radicular signs or symptoms; there was good strength bilaterally. *Id.* X-rays provided by plaintiff documented a grade II spondylolisthesis at L4-5 with some degeneration at L5. Dr. DeGenova diagnosed grade II spondylolisthesis L4-5, degenerative disc disease L5-S1, and back pain. *Id.* He recommended an MRI and physical therapy. *Id.*

A July 2008 MRI of the lumbar spine revealed multi-level degenerative disc disease, most prominent at L4-5 and L5-S1, moderate grade I spondylolisthesis at L4-5 with mild facet joint diffusion and minimal disc bulge at L2-3 and L3-4 causing mild neural foraminal stenosis. There was no herniated discs or significant canal stenosis. *PAGEID* 347-48.

When plaintiff was evaluated for physical therapy on July 10, 2008, the therapist observed that plaintiff's sitting and standing postures were within functional limits; he ambulated without significant gait deviations. *PAGEID* 349.

At a July 11, 2008 office visit, plaintiff complained to Dr. DeGenova of continued, constant low back pain. *PAGEID* 345. However, he commented that he is "able to deal with [his back pain]. He has had it all of [h]is life." Dr. Degenova offered various treatment options: physical therapy,

6

epidural steroid injections and surgery. Plaintiff opted to continue physical therapy. *Id.*

On August 15, 2008, plaintiff noted some improvement with physical therapy, but complained that he was still unable to work or ride in a car into town. *PAGEID* 346. According to Dr. DeGenova, plaintiff's clinical findings were unchanged: he had full motor strength, +5/5 strength in the bilateral lower extremities and full sensation and symmetric bilateral deep tendon reflexes at the patella and Achilles. *Id.* Dr. DeGenova concluded that plaintiff "is total[ly] disabled unable [sic] to work a day in his life." *Id.*

### IV.

### Administrative Decision

In his decision, the administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease of the lumbar spine with moderate grade I spondylolisthesis at the L4-L5 vertebrae and mild disc bulges at the L2-L3 and L3-L4 vertebrae without stenosis. *PAGEID* 61. Plaintiff does not have an impairment or combination of impairments that meets or medically equals any listed impairment, *PAGEID* 62, and has the residual functional capacity

> to perform sedentary work as defined in 20 CFR 416.967(a), meaning be can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for 2 hours in an 8 hour workday; and, sit for 6 hours in an 8 hour workday. The claimant must also have a sit/stand option exercised at his discretion that allows him to stretch his back. There should be no climbing of stairs, ropes, scaffolding, or ladders. The claimant should never kneel, crouch, or crawl, but can occasional stoop. There should be no forced pace or quota requirements and no assembly line work.

*Id.* Relying on the vocational expert's testimony, the administrative law judge found that plaintiff is able to perform other work that exists in significant numbers in the national economy. *Id.* Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act.  PAGEID 66.

**V.**

**DISCUSSION**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if

8

substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In his *Statement of Errors*, contends, first, that the administrative law judge failed to accord proper deference to the opinions of plaintiff's treating physicians, Dr. DeGenova and Dr. Quinlin, s*ee* Doc. No. 12 at *PAGEID* 366, and, second, in evaluating plaintiff's subjective complaints, *id.* at *PAGEID* 368.

Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §416.927(d)(2). If the administrative law judge finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §416.927(d)(2),(4).

The administrative law judge rejected Dr. DeGenova's opinion that plaintiff is "unable to work a day in his life," *PAGEID* 346, as inconsistent with plaintiff's own testimony and invasive of the Commissioner's prerogative:

> The claimant has a history of working on the family farm at
> least on a part-time basis. The claimant also testified that

>he is still doing light farm work.  Opinions by a medical
>source that claimant is disabled will be reviewed along with
>any other evidence that supports the opinion, but the
>Commissioner is responsible for making the determination or
>decision about whether claimant meets the statutory definition
>of disability.

*PAGEID* 64.  He assigned "no weight" to Dr. Quinlan's extremely restrictive August 2007 functional capacity assessment as "not substantiated by or consistent with the objective medical evidence."  *Id.*  The administrative law judge had earlier specifically noted that the "objective medical evidence" included findings at the August 2005 consultative examination by Dr. Woskobnik, who recommended a limitation to sedentary activity, *PAGEID* 316-18, and findings at the December 2007 consultative examination by Dr. Weaver, who recommended a sit/stand option, *PAGEID* 322-30.  *PAGEID* 63.  Indeed, the residual functional capacity found by the administrative law judge incorporated these recommendations. *See PAGEID* 62.  This Court concludes that the administrative law judge gave good reasons for the weight accorded the opinions of these treating physicians.  *See* 20 C.F.R. § 416.927(d)(2).  Moreover, the Commissioner is not bound by a treating provider's opinion of disability.  20 C.F.R. § 416.927(e)(3).  Plaintiff's first challenge to the decision of the administrative law judge is without merit.

Plaintiff also challenges the administrative law judge's assessment of plaintiff's subjective complaints.  A claimant's subjective complaints must be supported by objective medical evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, the evaluator must look to the record to determine whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human*

*Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, the evaluator must then determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id*. (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness' demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

The administrative law judge noted plaintiff's subjective complaints and testimony and found that the medical evidence supports allegations of pain and discomfort.  However, the administrative law judge went on to find that

> there is no objective medical evidence to show that the severity [of that pain and discomfort] would prevent him from doing a job that would follow the above outlined residual functional capacity assessment.  To the extent they are credible the claimant's subjective allegations have been considered and incorporated into the above outlined residual functional capacity.  The assessment of the functional capacity gives the greatest possible weight to his allegations.

*PAGEID* 64.  Elsewhere in the opinion, the administrative law judge also noted plaintiff's own testimony that he still works part-time on the family farm.  The administrative law judge specifically found that plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment" found by the administrative law judge.  *PAGEID* 62.  This Court concludes that, in making this credibility determination, the administrative law judge applied the appropriate standards and his findings are supported by substantial evidence.  The Court is therefore without authority to reject those findings.  The mere fact that the administrative law judge's opinion is relatively short does not militate a different result.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v.*

*Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: February 5, 2013                                     *s/Norah McCann King*
                                                          Norah McCann King
                                                          United States Magistrate Judge